UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Sheila A. Moore, Hernandos T. Moore, S.M., a minor, by her mother and next friend, Sheila A. Moore, and Lesley Webb, | ) ) ) ) | |
| Plaintiffs, | ) ) | No.10 C 5578 |
| v. | ) ) ) | Judge Edmond E. Chang |
| Ryan Sheahan, | ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Sheila Moore, Hernandos Moore, S.M.[1] (who is a minor and thus represented by her mother, Sheila Moore), and Lesley Webb bring this lawsuit against Defendant Ryan Sheahan (a Chicago police officer and Special Deputy United States Marshal), in his individual capacity. Plaintiffs allege civil rights violations pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).[2] Plaintiffs' claims arise out of a search of Plaintiffs' home by Sheahan and other officers on September 17, 2008. Plaintiffs' amended complaint includes claims that Sheahan illegally entered and searched Plaintiffs' apartment and used excessive force against Plaintiffs Hernandos Moore and Lesley Webb. R. 41, Am. Compl.[3] Sheahan has

---

[1]S.M. is referred to by her initials pursuant to Fed. R. Civ. P. 5.2(a).

[2]This Court has subject matter jurisdiction under 28 U.S.C. § 1331.

[3]Citation to the docket is "R." followed by the docket entry. Citations to the parties' Rule 56.1 statements of fact are "DSOF" (for Sheahan's statement of facts), R. 46, "PSOF" (for Plaintiffs' response to Sheahan's statement) and "PSOAF" (for Plaintiffs' additional facts), both R. 50, and "DSOAF" (for Sheahan's response to Plaintiffs' additional facts), R. 55, followed by the paragraph number.

moved for summary judgment on all claims. R. 44, Mot. Summ. J.. For the reasons set forth below, Sheahan's motion for summary judgment is granted as to Plaintiffs' illegal seizure and excessive force claim, but denied as to Plaintiffs' remaining claims.

I.

In deciding this summary judgment motion, the Court views the evidence in the light most favorable to Plaintiffs. Plaintiff Sheila Moore is the mother of Plaintiffs Hernandos Moore, Lesley Webb, and S.M., and all four of them lived at 1523 Greenwood, Apartment 1, in Ford Heights, Illinois in the summer of 2008. DSOF ¶ 3.[4] Two other children of Sheila Moore, Shirley and Donterryo Moore, as well as Donterryo Moore's girlfriend, Nicole Barnes, also lived at 1523 Greenwood. *Id.* ¶ 8. Defendant Ryan Sheahan was a Chicago police officer assigned to the Fugitive Apprehension Section of the Chicago Police Department and a Special Deputy United States Marshal. *Id.* ¶ 4.

On September 17, 2008, Sheahan and about five other law enforcement officers were assigned to visit Plaintiffs' home at 1523 Greenwood. *Id.* ¶ 13. Their task was to locate a fugitive named Jeffrey Kemp. *Id.* An investigation led the officers to believe that Shirley Moore was a girlfriend of Kemp. DSOF ¶ 7. 1523 Greenwood is a two-flat unit, and the Plaintiffs occupied the first floor. *Id.* ¶ 8. The entrance to Plaintiffs' apartment was located on the side of the property, rather than in front. *Id.* ¶ 14. When the officers arrived at 1523 Greenwood on that September morning, two or three

---

[4]Defendants refer to the address as being on *North* Greenwood, while Plaintiffs deny that such an address exists. PSOF ¶ 3. If Google Maps is to be trusted, the address appears to be simply Greenwood Avenue.

officers approached the entrance to Plaintiffs' unit at the side of the building. *Id.* ¶ 15; PSOF ¶ 15. Significantly, the parties disagree about Sheahan's precise positioning and what he was able to see. Sheahan states that he was positioned in "the front area of the property" in order to prevent anyone from escaping the apartment and "did not see what happened" when the other officers approached the entrance to the unit. DSOF ¶ 15. Plaintiffs contend, based on evidence described below, that Sheahan stood at the corner of the building between the side and front of the unit and could see the side door of the unit where the other officers approached. PSOF ¶ 15.

Sheahan was at his station at the corner of the unit for one to five minutes before he heard other officers call to him that they needed help. DSOF ¶ 16. Sheahan approached the side door of Plaintiffs' unit and was told by the officers that they were going forward with a search of the house. *Id.* Sheahan was never explicitly told by any of the officers on the scene that consent was given for the search. *Id.* ¶ 18. Plaintiffs Hernandos Moore, S.M., and Lesley Webb were at home when the officers entered. *Id.* ¶ 31. Lesley Webb and S.M. were in the room where the officers first entered, and heard either a "knocking sound" or a "pecking sound" before the officers entered. *Id.* ¶¶ 33, 35. According to Plaintiffs, the door through which the police entered was locked. PSOAF ¶ 3.

Plaintiffs maintain that no resident in the home consented to the entry. *Id.* ¶ 2. For purposes of this summary judgment motion only, Sheahan admits that consent was never obtained (or at least that a reasonable jury could so find). DSOAF ¶ 2, n.2. Sheahan claims, however, that he "assumed" consent had been given when he entered

3

the home, because he was given the signal that the search was proceeding. DSOF ¶ 18. Plaintiffs maintain that Sheahan made no such assumption (the evidence of this is described below). PSOF ¶ 18.

Sheahan was not the first officer to enter the home, and as he approached the side door, he saw two African-American children leaving the home, but did not speak with them. DSOF ¶¶ 17, 19. Hernandos Moore and Lesley Webb had guns pointed at them initially and were escorted by officers out of the home, and made to wait outside near the back entrance to the home. *Id.* ¶¶ 32, 37. S.M. was permitted to remain in the home after she told the officers she was not wearing any clothing. *Id.* ¶ 34. Sheahan and the other officers entered and searched the home for approximately 10 to 15 minutes, but did not find Kemp. *Id.* ¶ 19.[5]

After the search was completed and while still at the location, Sheahan spoke with Sheila and Shirley Moore. DSOF ¶ 21; PSOF ¶ 21. Sheila and Shirley Moore were not at home when their home was searched. PSOAF ¶ 6. Sheahan contends that he spoke with Sheila and Shirley Moore directly after he left the unit. DSOF ¶ 21. Plaintiffs counter that Sheahan returned to his car in the front of the unit after the search, and left his vehicle to speak with Sheila and Shirley Moore in the area behind the unit only after they returned home. PSOF ¶ 21. During their conversation, Sheahan asked about the location of Kemp, and gave Shirley Moore his business card. DSOF ¶ 21.

---

[5]Plaintiffs agree with this statement only for the purpose of the summary judgment motion. PSOF ¶ 19.

Shirley Moore called Sheahan later, after she learned that officers had actually entered and searched Plaintiffs' home, to ask Sheahan why he had not mentioned the search earlier. PSOAF ¶ 11. According to Shirley Moore, during that conversation, Sheahan told Shirley Moore that someone had let the officers in. *Id.* When Shirley Moore said she was going to contact her lawyer, Sheahan stated that the door had been cracked, was slightly open, and was never locked. *Id.* After the phone call with Shirley Moore and before his deposition, Sheahan stated in response to interrogatories propounded by Plaintiffs about the search that "Sheahan recalls that consent was given by two females who answered the door." PSOAF ¶ 12. At his deposition, Sheahan stated that he did not hear or see consent being given, nor was he told that consent was obtained. R. 46-1, Def.'s Exh. 9 (Sheahan Dep.) at 58:20-59:7, 85:21-86:4.

In February 2012, after discovery was completed, Plaintiffs filed an amended complaint asserting claims under *Bivens* for Fourth Amendment violations allegedly committed by Sheahan, including "[1] Failure to Knock and Announce, [2] Search of Living Quarters Without Warrant, [3] Unconstitutional Seizure, and [4] Use of Excessive Force." Am. Compl. at 1. As to the third and fourth claims, Plaintiffs asserted that Sheahan either directly participated in the constitutional violations, or "failed to take reasonable steps to prevent or stop" the violations. *Id.* ¶ 11. Sheahan filed a motion for summary judgment on all claims. Mot. Summ. J.

5

II.

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material facts and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). All facts, and any inferences to be drawn from them, must be viewed in the light most favorable to the non-moving party. *Wis. Centr., Ltd. v. Shannon*, 539 F.3d 751, 756 (7th Cir. 2008).

III.

A. **Warrantless Entry and Search**

Plaintiffs allege that Sheahan violated Plaintiffs' Fourth Amendment rights when he and other officers entered and searched Plaintiffs' home without a warrant. It is helpful to first lay out what is *not* at issue on this claim. Sheahan concedes that there were no exigent circumstances that would justify a warrantless, non-consensual entry into Plaintiffs' home on September 17, 2008. DSOF ¶ 24. Sheahan also concedes, (but only for purposes of evaluating the summary-judgment motion) that no consent was obtained to enter or search the home that day. DSOAF ¶ 2, n.2. In other words, for purposes of summary judgment, Sheahan concedes that officers entered the apartment without lawful justification. What is at issue on this motion is whether Sheahan knew,

6

at the time entry was made, that no consent was obtained and that the entry and search were therefore illegal.

Before analyzing the entry-and-search claim, a quick detour is warranted to address what Plaintiffs characterize as their separate failure-to-knock-and-announce claim. In the amended complaint, Plaintiffs attempt to allege a related, but what they say is a separate, theory of liability—violation of the knock-and-announce rule. Am. Compl. at 1. The "knock and announce" requirement is a general rule, derived from the overall requirement of reasonableness under the Fourth Amendment, and holds that "officers entering a dwelling must knock on the door and announce their identity and purpose before attempting forcible entry." *Green v. Butler*, 420 F.3d 689, 695 (7th Cir. 2005) (citing *Richards v. Wisc.*, 520 U.S. 385, 387 (1997)). In their response brief, Plaintiffs argue that the knock-and-announce allegations form a separate claim, and because Sheahan presented no arguments specifically addressing that claim, he has waived the right to move for summary judgment on it. R. 52, Pl.'s Resp. Br. at 3. But Plaintiffs are incorrect that the knock-and-announce allegations form, in this case, a separate claim. Rather, the allegations that Sheahan and his fellow officers failed to knock on Plaintiffs' door and announce their purpose necessarily merge with Plaintiffs' warrantless entry claim. Knocking and announcing is, after all, one way that officers can gain consent to enter and search a home. *See, e.g. Whitt v. City of Rockford, Ill.*, 700 F. Supp. 391, 396 (N.D. Ill. 1988) (describing how officers knocked and announced themselves in an attempt to gain entry by consent). In any event, as explained below,

7

the Court denies summary judgment on Plaintiffs' warrantless entry claim, including any available arguments based on the knock-and-announce rule.

Returning now to the primary claim, in his summary judgment papers, Sheahan argues that he is entitled to summary judgment on the warrantless entry and search for two independent reasons: (1) he was not personally involved, and (2) he is entitled to qualified immunity. But Sheahan's arguments rely on his factual contention that he could not see the officers at the side door and that he assumed—when the officers stationed at the entrance to the apartment told Sheahan they were commencing with a search of the apartment—the officers had obtained consent. R. 45, Def.'s Br. at 4; R. 54, Def.'s Repl. Br. at 2. If that assumption were the only reasonable view of the facts, then Sheahan is right that he would be entitled to summary judgment. But Plaintiffs assert that Sheahan knew that consent was not obtained. PSOF ¶¶ 15, 18. And drawing all facts and inferences in the light most favorable to the Plaintiffs, as the Court must on Sheahan's motion for summary judgment, the Court agrees that a jury could reasonably infer from the facts presented by Plaintiffs that Sheahan knew that consent to enter and search the home had not been obtained.

First, Sheahan's testimony at his deposition about whether or not he could see what was happening at the entrance to Plaintiff's apartment (which, remember, was on the side of the unit) was equivocal, at best. At one point in his deposition, Sheahan stated, "I was covering the side. And, *as I recall*, some of the officers knocked on the door, and they kind of gave the signal that we're going to go in." Sheahan Dep. at 53:14-17 (emphasis added). One reasonable way to interpret that testimony is that

8

Sheahan was observing the officers stationed at the entrance to the house at the moment officers were making entry. Sheahan also testified that "from [his] location in the front of the house [he] could [] see the door on the side of the house[.]" *Id.* at 55:2-5. Against those pieces of testimony, Sheahan points to the following exchange during his deposition:

> Q.  . . . From the time that you saw the two or three of the officers approaching the side door to the time they give you the signal that you are going in, what happened during that time?
>
> A.  I was covering the house, so I don't know what happened.
>
> Q.  Okay.
>
> A.  I was covering the front of the house. I don't know what happened in there.

*Id.* at 58:10-19. So Sheahan did ultimately deny observing the officers knock and did deny seeing any other interaction that occurred (or did not occur) at the entrance to the residence. But his inconsistent answers on the issue at his deposition could lead a reasonable jury to conclude that Sheahan was in a position to see whether consent was obtained by the other officers, and that he saw the officers make entry without obtaining consent.

Second, there is evidence that Sheahan made false exculpatory statements as to the officers' entry, which could show that he knew the entry was made without consent (this view of the facts again depends on taking the evidence in the light most favorable to Plaintiffs). Immediately after the warrantless search, Sheahan spoke with Sheila and Shirley Moore but did not mention that the police had just entered and

9

searched the home. PSOAF ¶ 11. When Shirley Moore later called Sheahan to ask why the police had entered and searched the home without a warrant, Sheahan stated that someone in the residence had let him in. *Id.* After Shirley Moore told Sheahan that she was going to contact her lawyer, Sheahan arguably shifted to another story, telling her that "the door had been cracked; it was slightly open; and that it was never locked." *Id.*[6] These explanations are contrary not only to each other, but also to Sheahan's deposition testimony. Plaintiff can reasonably argue (whether the jury accepts it is a different question) that the shifting explanations are relevant to Sheahan's knowledge and consciousness of guilt. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000) ("it is permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation" in an employment discrimination case) (emphasis omitted). Sheahan's shifting and evidently false statements about whether and how consent was obtained are evidence of Sheahan's state of mind, and a jury could infer from the consciousness-of-guilt evidence that Sheahan knew that no consent was obtained.

---

[6]Sheahan argues that this fact should not be considered because Shirley Moore did not offer the testimony about a second explanation by Sheahan until the third time she was asked about the conversation during her deposition. Def.'s Repl. Br. at 4-6. But it is up to the jury to decide whether Shirley Moore was lying about this fact, or whether she credibly remembered additional detail when asked about the conversation again (just as it will be up to the jury to decide whether Sheahan's deposition answers were inconsistent and if so, whether the reason was innocent or not). Moreover, although the answer was made in response to a question posed by Shirley Moore's own counsel towards the end of the deposition, the question was *not* leading or suggestive of the answer in any way. R. 50-1, Pl.'s Exh. 1 (Shirley Moore Dep.) at 121. Sheahan's argument that "no reasonable jury could find in favor of plaintiffs based on this testimony" is thus rejected. Def.'s Repl. Br. at 6.

In addition, Sheahan provided sworn interrogatory answers in this case regarding the issue of consent that he later admitted were false, or at least inaccurate (and the jury can reasonably infer that he again was trying to hide the true answer—he knew there was no consent—but got caught in a lie). In Sheahan's interrogatory responses, when asked whether one or more of the occupants of 1523 Greenwood consented to the search, Sheahan stated that "he recalls that consent was given by two females who answered the door." R. 50-1, Pl.'s Exh. 4 ¶ 12. But Sheila and Shirley Moore—the only adult female occupants of the residence—did not arrive home until after the search was complete. PSOAF ¶¶ 6-8. And as detailed above, Sheahan testified at this deposition that he did not see whether consent was obtained, and only assumed it was. Sheahan's deposition testimony, post-search statements, and interrogatory responses are all admissible against him as substantive evidence (that is, may be considered for their truth, not just mere credibility impeachment), and Plaintiffs would be permitted to cross-examine him about those statements at trial.

In sum, Plaintiffs have presented sufficient evidence from which a jury could reasonably infer that Sheahan *knew* that consent to enter and search Plaintiffs' residence was not obtained. *See Mannola v. Farrow*, 476 F.3d 453, 458 n.2 (7th Cir. 2007) (adopting inferences in favor of non-movant where "the record [was] not conclusive"). Given this state of the record, Sheahan's arguments based on his alleged lack of personal involvement and qualified immunity must fail. To satisfy the personal responsibility requirement, Plaintiffs need only be able to show that the illegal entry and search "occur[red] . . . with his knowledge and consent." *Vance v*. Peters, 97 F.3d

11

987, 993 (7th Cir. 1996) (citing *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). If Sheahan was standing at the corner of the house and saw the officers approaching and entering the home without consent (and without a warrant or exigent circumstances), his personal involvement in the illegal entry and search is sufficient to create personal liability. Therefore, summary judgment based on Sheahan's lack of personal involvement in the entry and search must be denied.

Similarly, because a reasonable jury could conclude that Sheahan knew that consent was not obtained to enter and search the apartment, and yet he entered anyway, the Court cannot grant summary judgment based on qualified immunity. Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlowe v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). But the constitutional right of a person to be free from warrantless entries and searches of their home, in the absence of consent or another exception, *is* clearly established. *See Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006) ("It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable.") (quotations and citations omitted). And applying the general rule to the specific circumstances, as we must for qualified-immunity analysis, a reasonable officer would know that if no one inside Plaintiffs' home gave consent to enter, and there were no exigent circumstances and no search warrant, then the entry and search was

unreasonable under the Fourth Amendment. Therefore, Sheahan cannot avail himself of qualified immunity for the warrantless entry and search claim.[7]

B.  **Excessive Force**

Plaintiffs' amended complaint also alleges that Sheahan used excessive force against Plaintiffs Lesley Webb and Hernandos Moore when he, or other officers, seized them at gunpoint and made them wait outside during the search. Am. Compl. ¶¶ 8-10. Alternatively, Plaintiffs allege that Sheahan failed to intervene in the use of excessive force. *Id.* ¶ 11. But Plaintiffs now concede that they have insufficient evidence to sustain any excessive force claim against Sheahan. Pl.'s Resp. Br. at 3. Summary judgment is therefore granted as to Plaintiffs' illegal seizure and excessive force claim.

---

[7]At trial, it might be necessary to write a jury instruction that makes clear to the jury that even if no consent was given, if Sheahan reasonably believed that consent had been obtained (in other words, if he was *not* in a position to see that no consent was given), then he is not liable. *See Huff v. City of Burbank,* 632 F.3d 539, 549 (9th Cir. 2011) (noting, where a defendant officer did not observe the circumstances leading up to the entry, that "a reasonable officer may have believed, though mistakenly, that he and his fellow officials had been given consent to the enter the home"), *rev'd on other grounds,* ––– U.S.–––, 132 S. Ct. 987 (2012).

**IV.**

For the reasons stated above, Sheahan's motion for summary judgment [R. 44] is granted in part and denied in part. Summary judgment is granted in favor of Sheahan on Plaintiffs' excessive force claim. Summary judgment is denied as to Plaintiffs' illegal entry and search claims. At the upcoming status hearing, the parties should be prepared to address the case schedule moving forward, including whether a settlement conference is sensible.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: February 4, 2013